LAWRENCE T. EPPING AND JEANETTE T. EPPING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Epping v. Commissioner
Docket No. 6024-90
United States Tax Court
T.C. Memo 1992-279; 1992 Tax Ct. Memo LEXIS 302; 63 T.C.M. (CCH) 3012; May 14, 1992, Filed *302 Decision will be entered under Rule 155. Daniel A. Ritter, for petitioners. Gerald Douglas, for respondent. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in Federal income tax for tax years 1984, 1985, and 1986 of $ 35,296.20, $ 2,258.74, and $ 41,448.50, respectively. After concessions, the sole issue for decision concerns the donation of animal mounts and related items by petitioners to certain charities for which petitioners claimed deductions pursuant to section 170. [1] The parties do not dispute that charitable contributions were made. Nor do the parties dispute that the donees qualify as charitable organizations. The only dispute involves the proper method of valuation and the ultimate value of the items donated. FINDINGS OF FACT Some of the facts have been *303 stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Salem, Oregon, at the time of the filing of their petition. During the years in issue, Lawrence T. Epping (hereafter petitioner) was a land developer, and Jeanette T. Epping was not employed. In addition to his primary occupation, petitioner was an accomplished hunter and, as such, he had acquired numerous animal mounts and related items over the course of many years of hunting. Prior to the years in issue, petitioner displayed these animal mounts and related items in his trophy room. Beginning in 1984, petitioner began donating an assortment of animal mounts, horns, rugs, and antlers to Mt. Angel Abbey, Western Oregon State College (Jensen Arctic Museum), and Oregon State School for the Blind. [2] Over the course of the 3 years in issue, petitioner donated a total of 59 such items. However, regarding 23 of the items donated to Mt. Angel Abbey, petitioner donated only an undivided half interest. Petitioner retained possession of 20 of these 23 items because Mt. Angel Abbey did not have sufficient space for them. As of the date of *304 trial, petitioner displayed these 20 items in his office. Of the 59 items donated, 27 made The SCI Record Book of Trophy Animals, 4 made the Records of Big Game, and 2 made the North American Big Game record book. While The SCI Record Book of Trophy Animals covers North American species as well as the other continents, it has only been in existence approximately 10 years. By contrast, Records of Big Game and North American Big Game have been in existence since the late 1800's and, until recently, only covered species from certain continents. For the purpose of appraising the items donated, petitioner contacted Mr. R. Bruce Duncan (Duncan). Based on replacement costs and consistent with the Duncan appraisals, petitioners claimed deductions *305 for charitable contributions, in the amount of $ 105,800, $ 5,000, and $ 54,500 for tax years 1984, 1985, and 1986, respectively. At trial, however, petitioners informed the Court that they were no longer relying on Duncan's appraisal for any purpose. Rather, petitioners now rely on Mr. Jack Perry (Mr. Perry) as their expert witness for purposes of valuation and appraisal. OPINION The regulations provide that, if a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Generally, the fair market value of the property is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs.Respondent's determination in her notice of deficiency as to fair market value is presumptively correct, and petitioners bear the burden of proving that the fair market value is higher. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). As discussed *306 in more detail below, we find that an active market exists with substantial comparable sale items and that the fair market value of the 59 donated items is $ 95,000. [3]
In deciding this issue, we find the testimony of respondent's expert, Alan Zanotti (hereafter Mr. Zanotti) both credible and informative. Mr. Zanotti founded African Import Company in 1986 and is the president of the company. As part of his business, Mr. Zanotti maintains an inventory of over 100 animal mounts for sale to the general public. Further, in the course of business since 1986, Mr. Zanotti has purchased and sold as many as 3,000 animal mounts and related items, including many record book animals and several dozen full body mounts. Mr. Zanotti has purchased a number of these animal mounts directly from museums and hunters. Moreover, Mr. Zanotti inspected the items donated by petitioner and testified that *307 the items donated were very similar to the items he has bought and sold and the items held in his inventory. [4] Furthermore, Mr. Zanotti testified that he could replace the items donated by petitioner with items of similar quality through his current inventory or by going into the existing marketplace. We accept Mr. Zanotti's testimony and conclude an active market exists with substantial comparable sale items. [5]
*308 Petitioners argue no ordinary market for such items could possibly exist because the State of Oregon and Federal Government have imposed restrictions that prohibit, or at least severely limit, such transactions. We disagree. Mr. Zanotti, as part of his business activities and prior to his involvement in this case, contacted most of the 50 states to ascertain whether his business activities would violate any State laws. Mr. Zanotti concluded that many states, but not all states, permit the buying and selling of animal mounts. While Oregon's rules are more restricting than most states, the evidence indicates no restrictions under Oregon law exist regarding the purchase by an Oregon resident from a non-Oregon resident. Likewise, the evidence indicates no restrictions under Oregon law exist regarding a sale by an Oregon resident to a non-Oregon resident. Furthermore, while restrictions do exist pursuant to Federal law, petitioners have failed to present to the Court specific Federal laws restricting the purchase and sale of the items donated in this case. To the contrary, Mr. Zanotti testified that he is very familiar with the Federal laws and that he has purchased and sold items *309 comparable to the items donated in this case without violating any such laws. Finally, petitioners have failed to prove that Oregon law restricts the purchase or sale of African species in any way. Petitioners also claim that, unlike the items bought and sold by Mr. Zanotti, the items donated in this case are authentic. Petitioners further claim that authenticity in an animal mount is paramount to museums. Therefore, petitioners conclude, Mr. Zanotti's alleged comparable sales are not comparable. We disagree. First, none of petitioners' witnesses who represented the donee museums in this case were concerned with authenticity in that none were even aware of where, when, or how the animals were taken. Similarly, none of these witnesses requested or required record class trophies, and none of them knew which of the donated items were in the record books. Second, we find that petitioners have failed to prove that many of the items purchased and sold by Mr. Zanotti were any less authentic than the items donated in this case. In fact, a majority of Mr. Zanotti's purchases were made directly from hunters. For reasons stated above, we conclude that an active market exists with substantial *310 comparable sale items. While we agree with petitioners that all factors including replacement cost [6] may be relevant in determining value, petitioners have not carried their burden of proving that replacement cost has a probative correlation to fair market value in this case. Estate of Miller v. Commissioner, T.C. Memo. 1991-515, is distinguishable. In Estate of Miller, the taxpayer donated numerous animal trophies to the State of Louisiana and claimed deductions for charitable contributions. The Court concluded that replacement costs were probative in that case. However, the Government in Estate of Miller, among other things, did not present sufficient credible evidence of comparable sales. In fact, the Government's expert witness in Estate of Miller admitted he was unaware of comparable sales for a majority of the items in the collection. Estate of Miller v. Commissioner. That is simply not the situation in this case. As stated above, we find Mr. Zanotti's testimony concerning comparable sales convincing. Accordingly, we find that the fair market value of the donated items can be determined by comparable sales. Petitioners did not *311 present any evidence of comparable sales, relying solely on a replacement cost method. Thus, we conclude that, based on the evidence presented in this case, the fair market value for these donated items is $ 95,000, [7] which represents the full retail price of the donated items less a volume discount. The volume discount represents the difficulty involved in selling the complete collection in one transaction or, alternatively, the increased costs involved in selling the items individually. *312 Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The stipulation of facts indicates Salem Catholic Schools and City of Keizer received animal mount donations as well. On brief, however, petitioner points out that those organizations received only interests in real property, the values of which were resolved by the parties.↩
3. In arriving at our decision, we do not rely on the National Trappers Association section of the ninth attachment to Exhibit 10-J.↩
4. Of the items donated, Mr. Zanotti has never sold the full mount bison, musk ox, and Bighorn sheep. However, in his report, Mr. Zanotti stated he could easily find several of each if so requested. In addition, Mr. Zanotti testified that he would not buy or sell the mountain zebra rug and woodland caribou shoulder mount because they are listed in Endangered and Threatened Wildlife and Plants. ↩
5. Since we find an active market exists with substantial comparable sale items, cases cited by petitioner concerning the donation of a unique item are distinguishable. Estate of Palmer v. Commissioner, 839 F.2d 420 (8th Cir. 1988), revg. 86 T.C. 66; Adams v. Commissioner, T.C. Memo. 1985-268↩.
6. With regard to a particular specimen, Mr. Perry's method of appraisal includes, among several other things, the average costs involved in going on a hunt to obtain a specimen, including safari costs, trophy fees, taxidermy, and shipping. To these costs, though, numerous other factors are taken into account including: record book standing, quality of taxidermy, presentation of mount, and rarity of the particular specimen. ↩
7. We must point out that the parties' presentation and briefs left much to be desired, placing a significant burden on the Court to arrive at an appropriate solution. We also point out that, according to respondent, full retail price of the donated items is $ 84,705. However, the record reflects 2 items listed in Endangered and Threatened Wildlife and Plants and a few items that were not physically available for Mr. Zanotti to view (due to no fault of Mr. Zanotti). Accordingly, we make an upward adjustment so as to fairly account for these items. The $ 95,000 fair market value shall be allocated $ 69,200, $ 900, and $ 24,900 for 1984, 1985, and 1986, respectively.↩